IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAUN WRIGHT,                        :          No.  4:07-CV-0918
                    Plaintiff        :
                                     :          Judge John E. Jones III
              v.                     :
                                     :
SCOTT ALTLAND, *et al.*,             :
                    Defendants       :

## MEMORANDUM

December 10, 2008

This is a civil rights action, pursuant to 42 U.S.C. § 1983, brought by

plaintiff Shaun Wright, an inmate currently incarcerated at the State Correctional

Institution-Somerset.  In relevant part, Wright asserts claims of false arrest,

malicious prosecution, and unreasonable seizure against defendant Detective Scott

Altland arising out of Wright's arrest and prosecution for the robbery of a Hardee's

restaurant in York, Pennsylvania.  Presently before the Court is Detective Altland's

Motion for Summary Judgment (Doc. 28).  For the reasons set forth below, this

motion will be granted.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).   An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## III.  STATEMENT OF FACTS

At approximately 8:33 p.m. on September 15, 2005, an armed robbery was committed at the Hardee's of York in Springettsbury Township, York County, Pennsylvania.  (Def.'s Statement of Facts ["DSF"], Doc. 30, ¶ 2.)  Detective Scott Altland of the Springettsbury Township Police Department was assigned to investigate the robbery.  (*Id.*)

On September 15, 2005, Springettsbury Township police officers interviewed Hardees's employees Rachel Watkins and Christina Osborn who reported that a black male, 5'8" to 6' tall with a thin build and wearing a white t-

shirt, blue jeans with red stitching around the pockets, and a black knit cap pulled down over his face, entered the store carrying a black revolver in his right hand and demanded "give me all your money, you have twenty seconds, hurry up." (*Id.* at ¶ 3.) Watkins reported that she gave the robber $300 from her cash drawer and that the robber then fled the restaurant. (*Id.*)

On September 20, 2005, Detective Altland heard a radio dispatch reporting the armed robbery of the Fulton Bank in Hellam Township, a municipality adjoining Springettsbury Township. (*Id.* at ¶ 4.) Detective Altland and Detective Ogden Dickerson proceeded to the bank and were provided with a description of the bank robber and the vehicle utilized by the bank robber to flee the scene, and told that the bank robber had brandished a gun and stolen a bag of money. (*Id.* at ¶¶ 5-6.) Investigation of the bank robbery revealed that the description of the bank robber matched the description of the individual who had robbed the Hardee's, in that the bank robber also wore a white t-shirt and a black knit cap pulled down over his face and carried a black revolver. (*Id.* at ¶ 6.)

Later on September 20, 2005, Hellam Township Police advised Detective Altland that the vehicle used by the bank robber to flee the scene was a teal Mercury Tracer registered to Jora Rial who resided in the Yorkshire Apartments in

Springettsbury Township.[1]  (*Id.* at ¶ 7.)  Detectives Altland and Dickerson then

proceeded to the Yorkshire Apartments.  (*Id.* at ¶ 8.)  Once there, Detective Altland

interviewed Rial who was cohabitating in an apartment with Wright.  (*Id.* at ¶ 9.)

Rial stated that she and Wright had attended the York Fair on the evening of

September 15, 2005 and that she was with Wright until 6:30 or 7:00 p.m., at which

time Wright left stating he had something to do.  (*Id.*)  Rial told Detective Altland

that Wright stated he would be back around 8:00 p.m., but that he did not return

until 8:45 p.m.  Detective Altland avers that Rial told him that when Wright

returned he had "a lot of money" and that she questioned him about the money

because Wright was unemployed.  (*Id.*)  Wright contends that Rial did not question

him about the money and did not see how much or how little money he had.  (Doc.

32 ¶ 9.)  Rial's physical description of Wright, however, generally matched the

description of the perpetrator of the Hardee's robbery.  (Doc. 30 ¶ 9.)

---

[1] Wright notes that two witnesses of the bank robbery identified the getaway car as a Ford Escort, not a Mercury Tracer.  (Pl.'s Statement of Facts ["PSF"], Doc. 32, ¶ 7.)  The Tracer was the twin of the Escort produced by the Mercury division of the Ford Motor Company, and the two cars are essentially identical.  John DiPietro, *Generations Features: Ford Escort/Mercury Tracer,* Edmunds.com, May 18, 2003, http://www.edmunds.com/insideline/do/ Features/articleId=49542 (last visited December 8, 2008); Wikipedia, Mercury Tracer, http://en.wikipedia.org/wiki/ Mercury_Tracer (last visited December 8, 2008).  Regardless, Wright does not dispute that Hellam Township police told Detective Altland that the getaway car, whatever the make and model, was registered to Rial.

Detective Altland had learned that on September 20, 2005, after the bank robbery had occurred, Wright had made a cash purchase of three money orders in the amounts of $1,000, $500, and $15. (*Id.* at ¶ 11.)  Wright gave the money orders to Rial and told her to pay the rent with them. (*Id.* at ¶ 20.)  When Detective Altland met with Rial in the rental office of the Yorkshire Apartments later that day, he asked Rial for the money orders and took them from her.[2] (*Id.* at ¶ 10.; PSF at ¶ 10.)  The money orders taken from Rial were in the amounts of $1,000, $500, and $15, and were immediately turned over to Hellam Township police. (DSF ¶ 10.)  These money orders would later be introduced as evidence in Wright's trial on criminal charges arising from the bank robbery. (*Id.* at ¶ 11.)

Wright was charged with robbery, theft by unlawful taking, and three counts of simple assault relating to the September 20, 2005 bank robbery. (*Id.* at ¶ 10.)  On September 22, 2005, Wright was apprehended in Camden, New Jersey. (*Id.* at ¶ 12.)  Wright was interviewed in New Jersey by detectives from the Hellam Township Police Department and York County Detective Bureau. (*Id.*)

York County Detective Ray Taylor provided Detective Altland with the following account of the interview with Wright. (*Id.* at ¶ 13; Def. Ex. D, Doc. 30-2

---

[2] The parties characterize the actual seizure of the money orders differently.  Detective Altland states that Rial "handed them to him" while Wright states that Detective Altland "took money orders out of Rial's hand."  For purposes of the present motion, we use the plaintiff's characterization, although this dispute is immaterial.

at 39.)  Wright stated that the Hardee's robbery occurred the night he and Rial went

to the York Fair.  (DFS ¶ 13.)  Wright advised that he met someone called "P" at

the Hardee's of York restaurant.  (*Id.*)  Wright stated that "P" asked him to check

out how may people were inside the restaurant.  (*Id.*)  Wright stated that he went

inside the restaurant, asked for a cup of water, and then reported to "P" what he

saw.  (*Id.*)  Wright stated that he asked "P" why he wanted to know the information

and that "P" told him "I'm about to get 'em."  (*Id.*)  Wright said he understood that

"P" was about to rob the Hardee's.  (*Id.*)  Wright claimed that he then left the area

and had no more contact with "P."  (*Id.*)  Wright also told Detective Taylor: "I'll

take a conspiracy on this case, but I didn't do the robbery."  (*Id.*)

Wright disputes that he told police about anyone named "P" or that he stated

he would take a conspiracy charge.  (PSF ¶ 13.)  Wright does not dispute, however,

that this information was given to Detective Altland.

Detective Altland conducted further investigation of the Hardee's robbery

based on the information supplied by Detective Taylor.  (Def. Ex. D.)  On October

21, 2005, Detective Altland spoke again to Hardee's employee Christina Osborn

and asked if she remembered a black male entering the restaurant and ordering a

cup of water prior to the robbery.  (DSF ¶ 16.)  Osborn stated that during daylight

hours a black male did enter the store and order a cup of water.  (*Id.*)  Osborn

stated when the same black male entered the store for the robbery she thought it was a joke because it was the same person who had earlier ordered the cup of water.  (*Id.*)  Osborn also stated that the robber had the same jeans and mouth features as the individual who ordered the cup of water.  (Def. Ex. D.)

On November 11, 2005, Detective Altland filed a criminal complaint and affidavit of probable cause charging Wright with the Hardee's robbery in violation of 18 Pa. C.S.A. § 3701(a)(1)(v).  (DSF ¶ 17; Def. Ex. D.)  When the complaint was filed, Wright was already incarcerated and awaiting trial on the bank robbery charges.  (DSF ¶ 19.)

On May 10, 2006, following a jury trial in the York County Court of Common Pleas, Wright was found guilty of all charges arising from the bank robbery.  (*Id.* at ¶ 21.)  On June 21, 2006, Wright was sentenced to 5-15 years imprisonment and ordered to pay restitution to Fulton Bank in the amount of $5,171.24.  (*Id.* at 22-23.)  Wright appealed his conviction on the bank robbery charges, and on February 7, 2007, the Pennsylvania Superior Court affirmed the conviction.  (*Id.* at ¶¶ 24-25.)

On December 12, 2006, after another jury trial in the York County Court of Common Pleas, Wright was acquitted of the charges arising from the Hardee's robbery.  (*Id.* at ¶ 27.)

On May 7, 2007, Wright filed a motion for return of property in the York County Court of Common Pleas, arguing that Detective Altland had seized the three money orders in violation of the Fourth Amendment. (*Id.* at ¶ 31.) This motion was denied. (*Id.* at ¶ 32.)

## IV.   DISCUSSION

In this action, Wright asserts against Detective Altland claims of false arrest, malicious prosecution, and unconstitutional seizure of the money orders.[3] (Amend. Compl., Doc. 13, ¶ 3.) For the following reasons, Detective Altland will be granted summary judgment on all claims.

### A.   False Arrest and Malicious Prosecution Claims

Wright's claims of false arrest and malicious prosecution are closely related. *See Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1095-96 (2007). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. City of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when,

---

[3] Wright other claims against Detective Altland and his claims against other defendants were dismissed under 28 U.S.C. § 1915(e)(2) by order of February 29, 2008. (Doc. 20.)

for example, he is bound over by a magistrate or arraigned on charges.  Thereafter,

unlawful detention forms part of the damages for the entirely distinct tort of

malicious prosecution, which remedies detention accompanied, not by absence of

legal process, but by wrongful institution of legal process." *Wallace*, 127 S. Ct. at

1096.  To prove malicious prosecution, a plaintiff must show that: "(1) the

defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his

favor; (3) the defendant initiated the proceeding without probable cause; (4) the

defendant acted maliciously or for a purpose other than bringing the plaintiff to

justice; and (5) the plaintiff suffered deprivation of liberty consistent with the

concept of seizure as a consequence of a legal  proceeding." *Johnson v. Knorr*,

477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d

497, 521 (3d Cir. 2003)).

Because lack of probable cause is an element of either a false imprisonment

or malicious prosecution claim, both claims will fail if the plaintiff was arrested

upon probable cause.  *Id.* at 82.  "Probable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves

to warrant a reasonable person to believe that an offense has been or is being

committed by the person to be arrested." *Estate of Smith*, 318 F.3d at 514 (quoting

*Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  "A police officer

may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Probable cause "require[s] a belief of guilt that is reasonable, as opposed to certain," *Wright v. City of Philadelphia*, 409 F.3d 595, 601-02 (3d Cir. 2005), and "exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson*, 212 F.3d at 789. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright*, 409 F.3d at 601-02. Thus, "it is irrelevant to the probable cause analysis ... whether a person is later acquitted of the crime for which she or he was arrested." *Id.* at 602.

"Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." *Id.* In this case, Wright was arrested and prosecuted for robbery in violation of 18 Pa. C.S.A. § 3701(a)(1)(v), which provides that "[a] person is guilty of robbery if, in the course of committing a theft, he ... physically takes or removes property from the person of another by force however slight." "The elements of robbery as defined by § 3701(a)(1)(v) are (1) that the defendant physically take or remove

property, (2) from the person of another, (3) by use of force however slight."
*Commonwealth v. Williams*, 550 A.2d 579, 581 (Pa. Super. Ct. 1988) (quoting
*Commonwealth v. Smith*, 481 A.2d 1352, 1353 (Pa. Super. Ct. 1984)). "Any
amount of force applied to a person while committing a theft brings that act within
the scope of the robbery statute. This force may be actual or constructive. Actual
force is applied to the body; constructive force is use of threatening words or
gestures, and operates on the mind. The degree of actual force is immaterial, so
long as it is sufficient to separate the victim from his property in, on or about his
body." *Commonwealth v. Bedell*, 954 A.2d 1209, 1213 (Pa. Super. Ct. 2008)
(citing *Commonwealth v. Duffey*, 548 A.2d 1178, 1182 (Pa. 1988) and *Common-wealth v. Brown*, 484 A.2d 738, 741 (Pa. 1984)).

The undisputed facts of this case allow only the conclusion that Detective
Altland had probable cause to arrest and initiation prosecution of Wright for the
Hardee's robbery. Wright's physical description generally matched the physical
description of the perpetrator of the robbery given by multiple eye witnesses. After
independent investigation, Wright had already been arrested and charged with the
Fulton Bank robbery, and the physical description, clothing, weapon, and *modus
operandi* of the perpetrators of the two robberies were strikingly similar. Rial told
Detective Altland that she was with Wright until 6:30 or 7:00 p.m. on the night of

the Hardee's robbery, that Wright left and stated he would return around 8:00 p.m., but that he did not return until 8:45 p.m.  The Hardee's robbery occurred that evening at 8:33 p.m.  Rial also told Detective Altland that when Wright did return, he had "a lot of money" with him, a fact she questioned because he was unemployed.  Detective Altland was also informed by Detective Taylor that Wright had admitting to "casing" the Hardee's on the date of the robbery by entering the restaurant and ordering a cup of water, and that Wright would be willing to plea to conspiracy to commit the robbery.  Detective Altland thereafter re-interviewed a Hardee's employee, who stated that she remembered a black male entering the restaurant and ordering a cup of water on the date of the robbery and that she thought this individual and the perpetrator of the robbery were the same.  These facts and circumstances within Detective Altland's knowledge were more than sufficient to warrant a reasonable  belief that Wright had committed the Hardee's robbery, and therefore, Detective Altland had probable cause to arrest Wright and initiate prosecution of that charge.

Because the facts establish that Detective Altland acted with probable cause, Wright can only succeed on his false imprisonment and malicious prosecution claims if he shows, by a preponderance of the evidence: (1) that Detective Altland "knowingly and deliberately, or with a reckless disregard for the truth, made false

statements or omissions that create a falsehood in applying for a warrant and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786-87. "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Id.* at 787-88 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). The omitted information must be "highly relevant." *See id.* "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* at 788 (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). The plaintiff must always demonstrate deliberate falsity or reckless disregard. "Allegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). If there is sufficient evidence of omissions and assertions made knowingly, or with reckless disregard for the truth, the court must determine the materiality of the misstatements and omissions, by excising the offending inaccuracies and inserting the facts recklessly omitted, and then determining whether or not the "corrected" warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789. If it does, summary judgment in favor

14

of the defendant is appropriate because the plaintiff would have been arrested and prosecuted even in the absence of such omissions and misrepresentations. *Id.*

Wright asserts three omissions that Detective Altland allegedly made knowingly and deliberately, or with a reckless disregard for the truth. First, Wright argues that in making out his criminal complaint Detective Altland did not note that he did not conduct a line up or photo array. This is not the type of highly relevant information that a reasonable officer would be expected to include an a probable cause affidavit. An officer cannot be expected to detail all of the investigative efforts he has *not* undertaken. Rather, his job is to inform the judge of the material information, both inculpatory and exculpatory, derived from the investigation he has conducted. *See id.* at 787-88. Second, Wright argues that Detective Altland omitted that one witness stated the robber wore black, rather than blue, jeans and "possibly red boxer shorts." This minutiae is not highly relevant information that was recklessly omitted. Such minor, vague details could be omitted, especially when the description of the robber's clothing given by multiple other witnesses was consistent and similar to the omitted description. *See id.* at 788 (holding that omission of "slight variations in appearance" in photo array was not made with reckless disregard for the truth). Finally, Wright argues that Detective Altland omitted the fact that, when interviewed by the responding

officer, Hardee's employees stated the robber resembled a former employee named

Kenneth Tyler.  (*See* Pl. Ex. C, Doc. 31-2 at 6.)  That multiple eyewitnesses

tentatively identified the robber as someone other than Wright is the type of

exculpatory information that a reasonable person would understand to be the kind

of thing the judge would wish to know.  *See id.* (holding that the fact that an

eyewitness-victim did not identify the defendant was a reckless omission).

Wright also alleges that Detective Altland made several false assertions

knowingly and deliberately, or with a reckless disregard for the truth.  He argues

that Rial's statements that he had "a lot of money" on the night of the robbery and

that Rial questioned this because he was unemployed are not true.  Wright states

that he had only $30 or $40 and that he was, in fact, employed.  Wright also asserts

that during his interview with authorities in New Jersey he never made the

statements regarding "casing" the Hardee's or his willingness to accept a

conspiracy charge that Detective Taylor related to Detective Altland.  Wright has

adduced no evidence, however, that Detective Altland had any reason to doubt the

accuracy of the information given to him by Rial and Detective Taylor.  In fact,

much of the information provided by Rial and Detective Taylor was corroborated

by further investigation.  Rial's description of Wright was accurate, her story that

she and Wright were at the York Fair on the night of the robbery was confirmed by

16

Wright himself, and it was Rial's vehicle which was used as the getaway car in the bank robbery for which Wright was convicted.  The statements relayed by Detective Taylor regarding Wright's entering the Hardee's and ordering a cup of water were corroborated by a Hardee's employee who recalled someone she thought was the robber doing just that.  Wright has produced nothing beyond his conclusory allegations to demonstrate that Detective Altland must have had obvious reasons to doubt  the truth or accuracy of the information provided by Rial and Detective Taylor.

Because Wright has produced sufficient evidence of an omission made knowingly, or with reckless disregard for the truth, the Court must assess whether the omission was "material, or necessary, to the finding of probable cause."  *Id.* at 789.  Even after "correcting" Detective Altland's probable cause affidavit by inserting the fact that  Hardee's employees stated that the robber resembled a former employee named Kenneth Taylor, the Court finds that the affidavit still establishes probable cause to arrest and prosecute Wright for the robbery. Although the employees stated that the robber resembled someone else, this exculpatory fact does not outweigh the abundant and substantial inculpatory evidence described above which supported a finding of probable cause.  No reasonable jury could find facts that would lead to the conclusion that Detective

Altland's "corrected" criminal complaint lacked probable cause, and therefore,

Detective Altland is entitled to summary judgment on Wright's false arrest and

malicious prosecution claims.

### B.    Fourth Amendment Seizure Claim

Wright also alleges that Detective Altland seized his three money orders in

violation of the Fourth Amendment.  Detective Altland first argues that he is

entitled to summary judgment on the illegal seizure claim because Wright does not

have standing to assert a constitutional violation.  The Fourth Amendment

prohibits "unreasonable searches and seizures", U.S. Const. Amend IV, and

"unmistakably ... protects property as well as privacy."  *Soldal v. Cook County*,

506 U.S. 56, 63 (1992).  However, "Fourth Amendment rights are personal rights

which ... may not be vicariously asserted."  *Rakas v. Illinois*, 439 U.S. 128, 133-34

(1978).  To have standing to bring a § 1983 claim alleging the violation of his

property rights under the Fourth Amendment, Wright must: (1) assert his own

property rights, and (2) allege an injury in fact.  *See id.* at 139-40; *Eiland v.*

*Jackson*, 34 Fed. Appx. 40, 42 (3d Cir. 2002).   A "seizure" of property occurs for

Fourth Amendment purposes "when 'there is some meaningful interference with an

individual's possessory interests in that property.'"  *Soldal*, 506 U.S. at 61 (quoting

*United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The taking of the money

18

orders plainly constitutes a meaningful interference with the property. Thus, the question is whether Wright has a possessory interest in the money orders. The Court holds that he does. It is undisputed that Wright himself purchased the money orders and that he gave them to Rial to pay the rent on the apartment that they shared. Although Rial had physical possession of the money orders at the time they were seized, ownership of the money orders was Wright's and he directed how they were to be spent. Wright's dominion and control over the money orders establish a possessory interest sufficient to provide standing to challenge their seizure.

Detective Altland next argues that Wright is collaterally estopped from raising his Fourth Amendment claims regarding the seizure of the money orders. On May 7, 2007, Wright filed in the York County Court of Common Pleas a motion for the return of the three money orders, arguing that Detective Altland had seized them in violation of the Fourth Amendment. (DSF ¶ 31; Def. Ex. L, Doc. 30-2 at 103.) This motion was denied by the Honorable Penny L. Blackwell, the same judge that had presided over Wright's criminal trials. (DSF ¶ 32; Def. Ex. K, Doc. 30-2 at 101.) Detective Altland does not indicate the basis for Judge Blackwell's ruling and does not submit any written opinion on the motion. (*See* Def. Ex. K.) Citing only to his own "certification," Wright states that "Judge

Blackwell never heard the motion.  She referred it to my Public Defender, who would not litigate it because it a civil matter."  (PSF ¶ 32.)

The general federal rule is that the preclusive effects of prior cases are determined by the law of the prior forum, *Peloro v. United States*, 488 F.3d 163, 175 n.11 (3d Cir. 2007) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir.1999) and *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 (3d Cir. 1995)), and therefore, we apply Pennsylvania law to determine whether the denial of Wright's motion for the return of the money orders precludes him from raising his Fourth Amendment claim.  "The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

The first three elements of collateral estoppel are plainly met in this case: the sole basis for Wright's state-court motion was his current Fourth Amendment

argument that Detective Altland seized the money orders unconstitutionally; Judge Blackwell denied Wright's motion; and Wright, of course, was a party in the prior case.

As to the fourth element, Wright argues that he did not have full and fair opportunity to litigate the issue in the prior proceeding "because the state court did _not_ carefully and throughly analysis [sic] the facts, and the court did _not_ apply the proper constitutional case law to those facts." (Doc. 31 at 9.) As support for this argument, Wright relies only on his own "certification" of this statement. It is undisputed, however, that Wright presented the substance of his Fourth Amendment argument to the state-court through his written motion. Thus, Wright's conclusory allegation that "Judge Blackwell never heard the motion" is entirely unsupported by the record. To the extent Wright means to argue that a hearing on his motion was required for collateral estoppel to apply, he is incorrect. There is no requirement of a hearing or trial for an issue to be actually litigated such that it has preclusive effect. _See, e.g._, _Glade Park East Home Owners Ass'n v. Pa. Pub. Util. Comm'n_, 628 A.2d 468, 475 (Pa. Commw. Ct. 1993) ("Courts can apply claim or issue preclusion where a party did not have a hearing or trial procedure, but presented legal arguments before an adjudicating body."); _Dep't of Transp. v. Martinelli_, 563 A.2d 973, 976-77 (Pa. Commw. Ct. 1989) (" The fact

that more conclusive evidence might be presented at a subsequent hearing is

neither sufficient nor relevant grounds for disallowing the application of the

doctrine in this Commonwealth."); *see also* 18 James Wm. Moore, Moore's

Federal Practice § 132.03[2][a] (3d ed. 2006).  Nor does the fact that Wright

disagrees with the prior decision mean that he did not have a full and fair

opportunity to litigate the issue.  "[T]he relevant inquiry is not whether the earlier

decision was substantively correct, but, rather, whether the decision was made in

accordance with the minimum procedural requirements of due process."

*Karibjanian v. Chromalloy Pharm., Inc.*, 1991 WL 125176, at *2 (E.D. Pa. June

28, 1991).  Wright presented his arguments on the Fourth Amendment issue, and

the court which entertained these arguments was authorized to resolve the issue

and to consider all of the matters put before it.  This satisfies the fourth element for

the application of collateral estoppel.  *See id.*

As to the fifth element, Wright argues that "the state court did <u>not</u> determine

an issue of law of fact necessary to its judgment", but provides no support for this

statement.  (Doc. 31 at 9.)  As noted above, Detective Altland has not provided a

written opinion explaining Judge Blackwell's decision, but "[w]ith issue

preclusion, it is the prior judgment that matters, not the court's opinion explaining

the judgment.  Even in the absence of any opinion, a judgment bars relitigation of

an issue necessary to that judgment."  18 James Wm. Moore, Moore's Federal

Practice § 132.03[4][a] (3d ed. 2006).  The sole issue raised by Wright's motion

for the return of his property was whether Detective Altland seized the money

orders in violation of the Fourth Amendment.  In denying Wright's motion, Judge

Blackwell necessarily determined that the money orders were not seized in

violation of the Fourth Amendment.  The fifth and final element of collateral

estoppel is satisfied in this case.

Each of the elements of collateral estoppel apply to this case, and therefore,

Wright is precluded from raising his Fourth Amendment seizure claim which was

necessarily decided against him in a prior suit.[4]

## V.   CONCLUSION

For the foregoing reasons, Detective Altland's Motion for Summary

Judgment will be granted.  An appropriate order will be entered.

---

[4] Given that Wright's prior claim consisted solely of a single legal issue, the preclusive effect of the state court's judgment could be characterized as "technical *res judicata*" or claim preclusion which "prevents a future suit between the same parties on the same cause of action after final judgment is entered on the merits of the action."  *Nat'l Fiberstock Corp. v. W.C.A.B.*, 955 A.2d 1057, 1061 (Pa. Commw. Ct. 2008).  "[I]t is often difficult to distinguish between *res judicata* or collateral estoppel.  However, the important thing for the Court to consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the parties actually had an opportunity to appeal and assert their rights."  In this case, the controlling issue - whether Detective Altland seized the money orders in violation of the Fourth Amendment - was decided by the state court after Wright had an opportunity to present his arguments.  By either issue or claim preclusion, Wright is precluded from relitigating this Fourth Amendment argument in this case.