IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUN WRIGHT, | : | 4:07-cv-918 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| SCOTT ALTLAND; | : | |
| SPRINGETTSBURY TOWNSHIP | : | |
| POLICE; YORK COUNTY | : | |
| Defendants. | : | |

## **MEMORANDUM**

**November 10, 2010**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On January 7, 2010, the United States Court of Appeals for the Third Circuit issued an opinion affirming our grant of summary judgment on Plaintiff's false arrest and imprisonment and malicious prosecution claims and vacating the grant of summary judgment with respect to Plaintiff Shaun Wright's ("Plaintiff" or "Wright") unconstitutional seizure of property claim. Specifically, the Third Circuit concluded that the record did not conclusively establish that there was an adjudication on the merits of Wright's seizure of property claim in state court, thus this Court's grant of summary judgment on that claim on collateral estoppel

1

grounds was in error.[1]  Thereafter, we reopened this matter and ordered briefing from the parties on the issue of whether there was an adjudication on the merits in the state court, in either the civil or criminal action, with regards to the seizure of property claim.  The issue has been fully briefed by the parties and is therefore ripe for our review.

The following analysis is in essence a reconsideration of our determination relative to Plaintiff's seizure of property claim, based on the submissions we solicited from the parties and the facts developed therein.

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to

---

[1] The Third Circuit noted that the Defendant might be able to establish on remand that there was an adjudication on the merits in state court with the submission of additional evidence.

show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II. BACKGROUND

On September 15, 2005, at approximately 8:30 p.m., Detective Scott Altland ("Detective Altland") was assigned to investigate an armed robbery that occurred at a Hardee's restaurant in Springettsbury Township. On the night of the robbery, Springettsbury Township police officers interviewed Hardee's employees Rachel Watkins and Christina Osborn, who identified the robber as a black male, 5'8" to 6' tall with a thin build, and wearing a white t-shirt, blue jeans with red stitching around the pockets, and a black knit cap pulled down over his face. Watkins and Osborn stated that the male entered the store carrying a black revolver and demanded all of their money. Watkins gave the robber $300.00 from her cash register and the robber fled.

On September 20, 2005, Detective Altland heard a radio dispatch reporting an armed robbery at a bank in Hellam Township, the neighboring municipality. Detective Altland and another detective went to the bank. Like the robber of

4

Hardee's, the bank robber reportedly wore a white t-shirt and a black knit cap pulled down over his face and carried a black revolver. Later that day, Hellam Township police advised Detective Altland that the car used by the bank robber to flee the scene was registered to Jora Rial, who lived in the Yorkshire Apartments in Springettsbury Township.

Detective Altland went to the Yorkshire Apartments and interviewed Rial, who lived with Wright. Rial told Detective Altland that she and Wright went to the York Fair on September 15, 2005, the night of the Hardee's robbery. Rial explained that she was with Wright until 6:30 or 7:00 p.m. on that night, then Wright left the apartment because he had something to do. Rial stated Wright returned at 8:45 p.m. and they went to the fair. Rial told Detective Altland that Wright had a lot of money on him, and when she asked him where he got the money (since he was unemployed), Wright did not respond. During this interview, Detective Altland learned that Wright had given money orders to Rial. Detective Altland asked Rial for the money orders and she turned them over to him in the Yorkshire Apartment rental office. The money orders were in the amounts of $1,000.00, $500.00, and $15.00. Detective Altland thereafter gave the money orders to the Hellam Township police. Detective Altland later learned that Wright

5

had bought the money orders on September 20, 2005, after the bank robbery had occurred.

Subsequently, Wright was arrested for the bank robbery. York County Detective Ray Taylor interviewed Wright after his arrest about the Hardee's robbery. Detecctive Taylor reported that Wright told him that he had met "P" at Hardee's and that "P" had asked Wright to check how many people were inside the restaurant. Wright went inside and asked for a cup of water and then told "P" what he saw. Wright then asked "P" why he wanted to know the number of people inside and "P" replied, "I'm about to get 'em." Wright stated that he understood that "P" was about to rob Hardee's, so he left the area and he had no further contact with "P." According to Detective Taylor, Wright told police, "I'll take a conspiracy on this case, but I didn't do the robbery."

Detective Altland spoke again to Hardee's employee Christina Osborn, asking her if she remembered a black male ordering a cup of water before the robbery. Osborn stated that she did, and that when the same black male returned to rob the store, she thought it was a joke. Osborn also stated that the robber had the same jeans and mouth features as the person who ordered the cup of water. Thereafter, Detective Altland filed a criminal complaint against Wright and an affidavit of probable cause for his arrest for committing the Hardee's robbery.

Wright was acquitted of the Hardee's robbery after a jury trial but was convicted of the unrelated bank robbery.

After his acquittal of the Hardee's robbery, Wright filed the present action, alleging false arrest and imprisonment, malicious prosecution, and unreasonable search and seizure as to the money orders. As aforestated, our grant of summary judgment for Detective Altland on Wright's false arrest and imprisonment and malicious prosecution claims was affirmed by the Third Circuit. As also noted above, with respect to the seizure claim, the Third Circuit concluded that the record did not conclusively establish that there was an adjudication on the merits in state court civil proceeding on this claim, thus Detective Altland did not show that he was entitled to summary judgment on Wright's Fourth Amendment claim on collateral estoppel grounds. In response, Detective Altland now argues that Wright unsuccessfully litigated the constitutionality of the seizure of the money orders in his criminal trial, thus Wright's current Fourth Amendment claim is barred by collateral estoppel grounds.

Wright's bank robbery prosecution took place in the Court of Common Pleas of York County. On May 8, 2006, Wright made a motion for suppression of the money orders that was denied by the Honorable Penny L. Blackwell that same day. Following a jury trial conducted on May 9 and 10, 2006, Wright was found

7

guilty of the bank robbery and related offenses. He was sentenced to incarceration for a minimum of five and a maximum of fifteen years by Judge Blackwell.

Detective Altland submitted a transcript of the May 8, 2006 proceedings with his supplemental submission. When denying the suppression motion, Judge Blackwell stated:

> THE COURT: Counsel, I did receive [the suppression motion], and I reviewed the suppression motion and it is one that, first, it's untimely, but, secondly, it also goes to the credibility of the witness which can be dealt with on the – at the time of cross examination. And I know that you had set out clearly the concerns with that particular witness, but statements about where she was at, vantage point, et cetera, really would go to the cross examination as to credibility.

However, upon further argument, Judge Blackwell ruled that Wright did not have standing to make the suppression motion, because the money orders had been given to law enforcement by his girlfriend.

> THE COURT: You don't have the right to raise the issue about the suppression of those money orders. That's a third party. And if you had researched the law, you would understand that, and you clearly haven't. So the motion is denied.

(Transcript of May 8, 2006 proceedings, pp. 2-3).

Wright appealed his conviction to the Superior Court of Pennsylvania. In court filings, Wright indicates that one of the issues on appeal is "[w]hether the

trial court erred in permitting the introduction into evidence [*sic*] money orders which had been unlawfully seized?" (Doc. 72, Ex. N). The matter was briefed, and thereafter, on February 7, 2007, the Superior Court of Pennsylvania affirmed the conviction and judgment without a published opinion.

## II. DISCUSSION

As noted above, the sole remaining claim involves Wright's allegation that there was an unreasonable search and seizure of money orders. These money orders were introduced into evidence during Wright's criminal jury trial for bank robbery in state court. Wright was convicted of that crime and is presently serving a sentence of imprisonment.

As noted above, the Third Circuit held that the previous record did not conclusively establish that there was an adjudication on the merits with regard to whether the money orders were seized in violation of the Fourth Amendment. What is clear is that Judge Blackwell first denied the suppression motion as untimely, and after the issue was pressed by Wright, she again denied the motion, finding he lacked standing to argue for the suppression of the money orders because they were seized from Rial, a third-party. Thus, Judge Blackwell did not engage in a merits analysis of Wright's claim of a Fourth Amendment violation in the state criminal prosecution, but rather barred Wright from arguing for

suppression of the money orders on a jurisdictional basis – lack of standing.[2]

Thus, Detective Altland has not, and can not, show that he is entitled to summary judgment on Wright's Fourth Amendment claim based on collateral estoppel because there was not a previous final adjudication of the seizure issue on the merits.

Having concluded that collateral estoppel does not bar Wright's Fourth Amendment claim, we turn to an analysis of whether an exception to the warrant requirement applies here that prevents Wright from proceeding on his § 1983 claim relative to the seizure of the money orders.[3] It is well-established that seizure of personal property is *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to judicial warrant issued upon probable cause. *United States v. Place*, 462 U.S. 696, 701 (1983). But there are notable exceptions to this rule.

---

[2] It is important to note that it is not for this Court to determine the correctness of Judge Blackwell's ruling on the Defendant's suppression motion. In fact, in our view, Wright likely did have standing to object to the suppression of the money orders in the bank robbery prosecution. Ultimately however, that Judge Blackwell may have erred in this regard is of no moment in our analysis, because as set forth hereinafter there was no Fourth Amendment violation.

[3] Within its opinion, the Third Circuit noted that we should address "in the first instance whether Detective Altland has established that an exception to the warrant requirement applies," in the event that collateral estoppel did not bar the claim.

Consent is one of the several well-recognized exceptions to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent, and the scope thereof, is measured by a test of objective reasonableness, that being "what would the typical reasonable person have understood by the exchange between the officer and the subject." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). In determining the scope of consent, courts look "beyond the language of the consent itself, to the overall context." *Id*. If when giving consent to search, the party limits the scope of the consent, courts narrowly construe the limitation to determine whether the officers' conduct was objectively reasonable. *Id*; *see also United States v. Melendez*, 301 F.3d 27, 32 (1st Cir. 2001)(upholding consent search where home owner instructed police not to "tear up" premises, where police dismantled but did not damage stereo speaker in which evidence was found).

Here, the record establishes that Rial was in possession of the money orders, and that Wright had given them to her to pay the rent for their apartment. The record further reflects that Rial gave Altland the three money orders in the rental office of the Yorkshire Apartments. The record plainly establishes that Rial's handing over of the money orders to Altland was consensual and was not the result

11

of coercion.[4]  Thus, we find that because the money orders were given to Altland with the consent of Rial, an availing exception to the Fourth Amendment's warrant requirement exists here.

## III. CONCLUSION

Accordingly, because we find that an applicable exception to the Fourth Amendment's warrant requirement applies with respect to the seizure of the money orders, Detective Altland is entitled to summary judgment on Wright's remaining Fourth Amendment claim.  An appropriate Order shall issue.

---

[4] We find that Rial had a possessory interest in the money orders, thus she had the right to give consent to the seizure.  *See Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (stating that a seizure occurs for Fourth Amendment purposes when there is some meaningful interference with an individual's possessory interest in that property).